IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALI BYRD [GW-1449] | : | CIVIL ACTION |
| v. | : | |
| SUPERINTENDENT JOHN KERESTES, et al. | : | NO. 13-655 |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL  May 23, 2013
UNITED STATES MAGISTRATE JUDGE

Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner Wali Byrd is currently incarcerated at SCI-Mahanoy in Frackville, Pennsylvania, where he is serving a term of life imprisonment for first degree murder and possession of an instrument of crime. For the reasons which follow, it is recommended that Mr. Byrd's habeas claims be denied and dismissed without an evidentiary hearing.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The background of this case was set forth by the Superior Court of Pennsylvania as follows:

On May 19, 2004, April Person traveled to [Petitioner's] mother's home to pick up her son. [Petitioner] is an ex-boyfriend of Ms. Person and the father of her child. [Petitioner] subsequently drove Ms. Person and the child to their residence at 326 East Price Street, Philadelphia. Upon reaching her residence, Ms. Person attempted to call her current boyfriend, Vaughn Graham, to let him know she did not need a ride home. Shortly thereafter, Mr. Graham

---

[1] In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Byrd's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody, inclusive of all exhibits thereto; his amendment to the petition for writ of habeas corpus; the Commonwealth's Response, and exhibits; and the state court record.

arrived at the residence in his car and began honking his horn. [Petitioner] asked Ms. Person who was honking and she replied that it was Mr. Graham. N.T. Trial, 10/05/06, at 136-149.

Ms. Person walked out of her residence to speak with Mr. Graham. About five minutes later, [Petitioner] also came outside on the porch and began "talking trash." [Petitioner] then approached the vehicle, cursing as he proceeded, and told Ms. Person to go back into the house. *Id.* at 150. [Petitioner] then pushed Ms. Person and began yelling at her. N.T. Trial, 10/6/06, at 98. In response to [Petitioner's] actions, Mr. Graham told [Petitioner] to leave Ms. Person alone and [Petitioner] retorted by saying "mind our business." *Id.* at 98. Immediately thereafter, [Petitioner] drew a gun and shot Mr. Graham through the driver side window. Mr. Graham exited the car via the passenger side door, took several steps, and collapsed face down on the sidewalk. [Petitioner] then walked to where Mr. Graham was lying, shot him a second time, in the back, and left in his own car. N.T. Trial, 10/5/06, at 151-166. Ms. Person went inside her residence and called 911. *Id.* at 166; N.T. Trial, 10/6/06, at 156-160. After EMT personnel arrived on the scene, Mr. Graham was transported to the Albert Einstein Medical Center, where he was pronounced dead from gunshot wounds to the chest and lower back. N.T. Trial, 10/10/06, at 138-144.

From the night of the murder to the time of her testimony at trial, Ms. Person made a series of contradictory statements regarding her knowledge of the shooting. The first such statement came on the night of May 19, 2004, when Ms. Person was interviewed at the crime scene. At that point, Ms. Person denied being present when Mr. Graham was shot and denied having any knowledge of the shooter's identity. N.T. Trial, 10/5/06, at 169. A couple of hours later, when at the police station, Ms. Person continued to insist she did not know the identity of the shooter in a statement (Exhibit C-4) taken at approximately 12:35 a.m. on May 20, 2004. N.T. Trial, 10/6/06, at 13-14. Following a night of restless sleep, Ms. Person returned to the police office and made a second statement that same day (Exhibit C-5). In this second statement, made at approximately 7:00 p.m. on May 20, 2004, Ms. Person contradicted her earlier statement and said she witnessed [Petitioner] shoot Mr. Graham. *Id.* at 15-16.

Following the events of May 19, 2004, [Petitioner] was a fugitive from justice and was at large for nearly a year. Ultimately, [Petitioner] was apprehended in Seminole County, Florida, in April 2005 and transported to Pennsylvania. N.T. Trial, 10/10/06, at 27-30, 70-80. After his return to Philadelphia, Ms. Person again positively identified [Petitioner] as the shooter at a preliminary hearing on June 26, 2005 (Exhibit C-6). N.T. Trial, 10/6/06, at 23-24. However, on January 30, 2006, after visiting [Petitioner] in jail with [Petitioner's] mother, Ms. Person executed a written statement again denying knowledge of the shooter and essentially echoing the original version of events given to the police (Exhibit C-7).[2] *Id.* at 26-30, 69-72; N.T. Trial, 10/11/06, at 28, 46-47, 102-103. Ms. Person made a final statement, positively identifying [Petitioner] as the shooter and disavowing her previous contradictory statements, on September 29, 2006 (Exhibit C-8), just a week before trial. N.T. Trial, 10/6/06, at 36.

---

[2] Footnote [1] reads:

This statement was made in the form of an affidavit, though it is unclear if the statement was properly notarized. N.T. Trial, 10/6/06, at 36, 69-72.

*Commonwealth v. Byrd*, No. 3326 EDA 2006, slip op. at 1-4 (Superior Court, November 19, 2007). Following a jury trial before the Honorable Kathryn S. Lewis, Mr. Byrd was found guilty of murder in the first degree and possession of an instrument of crime. *Id.* at 4. On November 20, 2006, Petitioner was sentenced to life in prison without parole for the murder charge and six months to five years for the possession of an instrument of crime charge, the sentences to be served consecutively. *Id.*

Mr. Byrd filed a timely appeal with the Superior Court of Pennsylvania in which he raised the following issues:

1. The Commonwealth's evidence was insufficient to support [Petitioner's] conviction for first degree murder.

2. The trial court erred in allowing the Commonwealth to provide the contents of Exhibit C-5, a statement of Commonwealth witness April Person on rebuttal for the purpose of rehabilitating and buttressing her testimony on direct examination concerning her alleged eyewitness account of the shooting of the decedent in this case. Defense counsel did not question Ms. Person concerning the substance of the statement and did not otherwise introduce its contents in the trial. Accordingly, it was error for the trial court to allow the Commonwealth to present the contents of the statement which buttressed her direct testimony the [Petitioner] had committed the crime in question. The admission of this evidence was prejudicial to [Petitioner] and violated his rights to due process of law and denied him a fair trial.

3. The trial court erred in allowing the Commonwealth to provide witnesses' testimony from the preliminary hearing on rebuttal for the purpose of rehabilitation and buttressing her testimony on direct examination concerning her alleged eyewitness account of the shooting of the decedent in this case. Defense counsel did not question Ms. Person concerning the substance of the statement and did not otherwise introduce its contents in the trial. Accordingly, it was error for the trial court to allow the Commonwealth to present the contents of the statement which buttressed her direct testimony the [Petitioner] had committed the crime in question. The admission of this evidence was prejudicial to [Petitioner] and violated his rights to due process of law and denied him a fair trial.

*Commonwealth v. Byrd*, CP-51-CR-0801641-2005, slip op. at 3 (C.C.P. Philadelphia County, March 26, 2007). On November 19, 2007, judgment was affirmed. *Commonwealth v. Byrd*, No. 3326 EDA 2006, slip op. at 12 (Superior Court, November 19, 2007). The Pennsylvania

Supreme Court denied further review on May 27, 2008. *See Commonwealth v. Byrd*, No. 707 EAL 2007, Order (Supreme Court, May 27, 2008).

Mr. Byrd thereafter filed a timely petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S. §9541, *et seq.* on November 3, 2008. *See Commonwealth v. Byrd*, CP-51-CR-0801641-2005, slip op. at 1 (C.C.P. Philadelphia County, September 16, 2011); Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody[3], Commonwealth Court Opinion; Response to Petition for Writ of Habeas Corpus[4], Document 12-1. He raised the following claims:

1. Trial counsel rendered ineffective assistance of counsel by failing to object to the testimony of Detective Mostovyk. Petitioner alleges that this testimony improperly bolstered the credibility of Commonwealth witness April Persons.

2. Trial counsel rendered ineffective assistance by failing to question Michele Boyd [*sic*] that commonwealth eyewitness April Persons, petitioner's ex-girlfriend and the mother of his son, Wasir, left her (Michele Byrd's) home on the day in question with Wasir by bus and not in a car driven by petitioner. According to petitioner, this testimony would have refuted April Persons['] testimony that she observed petitioner kill the decedent.

*Commonwealth v. Byrd*, CP-51-CR-0801641-2005, slip op. at 2 (C.C.P. Philadelphia County, September 16, 2011); Petition, Commonwealth Court Opinion; Commonwealth's Response, Document 12-1. After a hearing, the Honorable Benjamin Lerner dismissed the petition on May 26, 2011. *Id.*

Petitioner appealed to the Superior Court of Pennsylvania and presented the following issues:

1. Was trial counsel ineffective in failing to object to Commonwealth testimony which bolstered the credibility of crucial prosecution witness April Person or to at least seek an appropriate limiting or cautionary instruction?

---
[3] Hereinafter "Petition".
[4] Hereinafter "Commonwealth's Response".

      2. Was trial counsel ineffective in failing to properly question and develop essential testimony from defense witness Michele Byrd?

*Commonwealth v. Byrd*, No. 1558 EDA 2011, slip op. at 2-3 (Superior Court, April 27, 2012); Petition, Superior Court Opinion; Commonwealth's Response, Document 12-2. The dismissal of Mr. Byrd's PCRA petition was affirmed on April 27, 2012. On September 19, 2012, the Supreme Court of Pennsylvania again denied further review. *See Commonwealth v. Byrd*, No. 252 EAL 2012, Order (Supreme Court, September 19, 2012).

      On January 30, 2013, Petitioner signed and dated the instant petition for writ of habeas corpus, and it was filed in this Court on February 4, 2013.[5] Mr. Byrd raises the following claims:

      GROUND ONE: Trial counsel was ineffective for failing to object and requesting a limiting instruction to bolstering testimony.

      GROUND TWO: Ineffective assistance of counsel for failing to bring out exculpatory testimony from a defense witness.

Petition at 5-7. The Commonwealth denies that Mr. Byrd is entitled to federal habeas relief because neither of his claims has merit. *See* Commonwealth's Response at 3.

## II. DISCUSSION

### A. Timeliness

      The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA or the Act),[6] signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions. One of the amended provision, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year

---

[5] For purposes of this Report and Recommendation, under the prison mailbox rule, I will accept the earlier date, January 30, 2013, as the date of filing. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).
[6] Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

from the date on which the petitioner's judgment of conviction becomes final. *See* 28 U.S.C. §2244(d)(1).[7]

In the instant case, the Supreme Court of Pennsylvania denied Mr. Byrd's petition for allowance of appeal on May 27, 2008. Consequently, his conviction became final on August 25, 2008, which is the last date on which he could have filed a timely direct appeal to the United States Supreme Court.[8] *See* Rule 13 of the Rules of the Supreme Court of the United States, which provides a ninety-day appeal period after a judgment by the state court of last resort. *See also Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) ("Therefore, a state court criminal judgment is 'final' (for purposes of collateral attack) at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires.") Accordingly, Mr. Byrd's habeas statute of limitations began on August 25, 2008, and, absent any tolling, would have expired on August 25, 2009.

The amended habeas statute does include a tolling provision for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. §2244(d)(2). Mr. Byrd filed a PCRA petition on November 3, 2008, after seventy days had passed of his one-year period. The statute of limitations period was tolled during the entire time that Petitioner's PCRA petition was pending,

---

[7] While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitations period to run from four other points of time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence". 28 U.S.C. §2244(d)(1).

[8] There is nothing in the record that would call for the use of one of the other start dates provided in 28 U.S.C. §2244(d)(1). There was no impediment to filing an application created by State action in violation of the Constitution or laws of the United States which prevented Mr. Byrd from filing a habeas petition. No new constitutional right has been asserted, and at no later date was the factual predicate of the claims presented discovered.

through September 19, 2012, when the Pennsylvania Supreme Court denied further review of the petition. The instant petition for writ of habeas corpus was filed on January 30, 2013.

The Commonwealth does not dispute, and I independently find, that Mr. Byrd's habeas petition is timely.

### B. Exhaustion and Procedural Default

The exhaustion rule, codified in 28 U.S.C. §2254,[9] provides that the habeas petitioner must have "exhausted the remedies available in the courts of the State" for all constitutional claims before a federal court shall have habeas corpus jurisdiction. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). There are rare circumstances that circumvent this requirement, none of which apply to the case at hand. To exhaust all remedies for a claim under 28 U.S.C. §2254, the habeas petitioner must give the state courts a full and fair opportunity to resolve all federal constitutional claims. *See Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order for Mr. Byrd to give his claims a full and fair opportunity for resolution, he must have presented both the factual and legal substance in the state courts through the highest

---

[9] The exhaustion requirements of 28 U.S.C. §2254 provide:

    (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that
        (A) the applicant has exhausted the remedies available in the courts of the State: or
        (B)(i) there is an absence of available State corrective process, or
         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

    (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

    (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirements unless the State, through counsel, expressly waives the requirement.

    (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

tribunal, the Pennsylvania Superior Court.[10] The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of the state judicial proceedings. *See Rose v. Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille*, 489 U.S. at 348 (1989). The burden is on the habeas petitioner to establish that he has fairly presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992), *cert. petition dismissed*, 506 U.S. 1089 (1993)) ("[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts . . . and the same method of legal analysis must be available in the state court as will be employed in the federal court").

An unexhausted habeas claim becomes procedurally defaulted when the petitioner has no additional state remedies available to pursue the issue. *See Wenger v. Frank*, 266 F.3d 218, 223-224 (3d Cir. 2001), *cert. denied*, 122 S.Ct. 1364 (2002). (when a claim has not been fairly presented to the state courts, but further state court review is clearly foreclosed under the state law, the claim is procedurally defaulted and may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default.).

Procedural default also occurs when an issue is properly asserted in the state system, but it is not addressed on the merits because of an independent and adequate state procedural rule. *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) and *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("If the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law, independent of the federal claim and adequate

---

[10] Seeking *allocator* by the Pennsylvania Supreme Court is not part of the standard appeals process. *See* Pennsylvania Supreme Court *Order No. 218* (May, 2000); *see also Mattis v. Vaughn*, 128 F.Supp.2d 249, 261 (E.D.Pa. 2001); *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.")

Procedural default may be excused if the habeas petitioner can show "cause" for the default and "prejudice attributable thereto", or the petitioner can demonstrate that the failure to consider his or her habeas claim will result in a "fundamental miscarriage of justice". *Wenger*, 266 F.3d at 224 (3d Cir. 2001) and *McCandless*, 172 F.3d at 260 (3d Cir. 1999). "Cause" for procedural default exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule". *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Slutzker v. Johnson*, 393 F.3d 373, 381-382 (3d Cir. 2004). A petitioner can only prove prejudice, in turn, by demonstrating that the errors at trial "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions". *Murray*, 477 U.S. at 494 (1986) (*citing United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). To establish a "miscarriage of justice", a petitioner must present new evidence of "actual innocence". *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Goldblum v. Klem*, 510 F.3d 204, 216 (3d Cir. 2007). Evidence of actual innocence, not presented at trial, sufficient to excuse procedural default must be "reliable evidence" that shows that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence". *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). *See also Schlup*, 513 U.S. at 324, 329 (1995) (defining "reliable evidence" as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Section 2254 also provides that the court may deny a habeas petition on the merits, notwithstanding the petitioner's failure to exhaust state remedies. *See* 28 U.S.C. §2254(b)(2). *See*

*also e.g. Clark v. Ricci*, 285 Fed.Appx. 933, 935 (3d Cir. 2008) (The court may deny unexhausted claims if they are without merit.)

### C. Standard of Review

Because Mr. Byrd's habeas petition was filed after the effective date of the AEDPA, the amended habeas standards apply to his claim. AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d) (Supp. 1998).

The United States Supreme Court has set forth the scope of habeas review after AEDPA. *See Williams v. Taylor*, 529 U.S. 362 (2000). According to the *Williams* majority:

> We [the Supreme Court Justices] all agree that state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated.
> . . . . .
> In sum, the [AEDPA] statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state-court's judgment, a federal court is convinced that a prisoner's custody – or as in this case, his sentence of death – violated the constitution, that independent judgment should prevail.

*Id.* at 389.

Moreover, in interpreting the AEDPA language, the Third Circuit has discussed the appropriate degree of deference which the statute requires a federal habeas court to accord a state court's construction of federal constitutional issues and interpretation of Supreme Court precedent. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied*, 528

U.S. 824 (1999). The Third Circuit has held that under 28 U.S.C. §2254(d)(1), a two-step inquiry is warranted. The majority agreed:

> First, the federal habeas court must determine whether the state court decision was contrary to Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an unreasonable application of Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

*Matteo*, 171 F.3d at 891 (3d Cir. 1999) (internal quotations and citations omitted).

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and appellate courts are correct. The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary. *See Stevens v. Delaware Correctional Center, et al.*, 295 F.3d 361, 368 (3d Cir. 2002).

### D. Analysis

1. <u>Ineffective Assistance of Counsel – Limiting Instructions</u>

Mr. Byrd first claims that trial counsel was ineffective for failing to object and requesting a limiting instruction to bolstering testimony. He explains:

> During the homicide detective testimony on direct-examination the jury learned that the authorities investigating this case, including veteran assigned homicide detectives and a[n] experienced prosecutors from the office of the District Attorney, considered and reviewed the conflicting statements of its sole eyewitness and concluded that, despite the witness having made both exculpatory and inculpatory statements, the witness was deemed sufficiently credible so as to justify proceeding with these charges and the obtaining of an arrest warrant.

Petition at 17. This claim was raised by Mr. Byrd during his PCRA proceedings and is, therefore, appropriately before this Court.

Ineffective assistance of counsel claims are evaluated under a two-prong test that the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*,

counsel is presumed to have acted reasonably and effectively unless the petitioner can demonstrate that "counsel's representation fell below an objective standard of reasonableness" and there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Id.* at 686-688, 693-694. Under the *Strickland* standard, counsel cannot be held ineffective for failing to raise a claim that is without merit or is futile. *See Premo v. Moore*, 131 S.Ct. 733, 741 (2011); *United States v, Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

As the PCRA court opined:

Petitioner claims that Detective Mostovyk's testimony impermissibly bolstered the credibility of the Commonwealth's chief witness against him, April Persons. Specifically, petitioner alleges that the prosecution attempted to bolster Ms. Person's "questionable" identification of petitioner by having the detective tell the jury that he and an Assistant District Attorney believed Ms. Persons enough to obtain an arrest warrant for [petitioner], and that counsel rendered ineffective assistance by failing to request a limiting instruction telling the jury that this testimony was received only to explain the circumstances of petitioner's arrest.

*Commonwealth v. Hartey*, 424 Pa.Super. 29, 621 A.2d 1023 (1993), is instructive on this issue. In *Hartey*, the Superior Court rejected the defendant's claim of improper bolstering. The court stated that "improper bolstering or vouching for witnesses by the Commonwealth occurs in two situations: '(1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witnesses testimony.' *Commonwealth v. Reed*, 300 Pa.Super. 224, 230, 446 A2d 311, 314 (1982)." Since the Commonwealth expressed no opinion as to the truthfulness of the witness, no improper bolstering was found by the *Hartey* court.

In the instant case, Detective Mostovyk's testimony included all of the inconsistent, contradictory statements Ms. Persons made concerning the identity of the shooter. He merely reiterated the testimony already given by Ms. Persons on both direct and cross-examination. Neither the Commonwealth nor the detective offered their personal opinion as to the truthfulness of Ms. Persons. In addition, the Commonwealth did not attempt to introduce information that was not entered into the record to support Ms. Persons' testimony. Thus, it cannot be said that the Commonwealth's decision to call Detective Mostovyk constituted improper bolstering. Additionally, the record further showed that trial counsel cross-examined Ms. Persons extensively about her prior inconsistent statements to police and others, (N.T. 10-6-06, pp. 38-81, 124-126), and the court instructed the jury prior to deliberations that they were the ones to decide the credibility of the witnesses.

Petitioner was not prejudiced by the detective's testimony or counsel's alleged failure to request an instruction in this regard. This court sees no basis for concluding that the jury would have rendered a different verdict had they not heard the detective's testimony or had they received a limiting instruction, particularly where there was also evidence of flight and an admission of guilt made by petitioner to Andrea Martin the day after the murder (N.T. 10-6-06, pp. 131-132, 137).

*Commonwealth v. Byrd*, CP-51-CR-0801641-2005, slip op. at 6-7 (C.C.P. Philadelphia County, September 16, 2011); Petition, Commonwealth Court Opinion; Commonwealth's Response, Document 12-1. When this issue was then presented to the Pennsylvania Superior Court, that court opined:

> In support of his first issue on appeal, [Petitioner] argues trial counsel was ineffective by failing to object to the testimony of homicide detective Steven Mostovyk. [Petitioner's] Brief at 10. Specifically, [Petitioner] complains Detective Mostovyk testified that information concerning [Petitioner's] identity was submitted to the District Attorney's office, which, based on that information, "approved" of the detective's pursuit of an arrest warrant. *Id.* Because the arrest warrant was based on the statement of April Person, sole eyewitness to the murder, and because the case presumably turned on her credibility as a witness, [Petitioner] argues that "the Commonwealth should not be permitted to bring to the jury's attention, under the circumstances of this case that, on May 21, 2004, a warrant of arrest for the [Petitioner] was issued subsequent to a review of the evidence by the District Attorney's Office as well as the Philadelphia Homicide Unit detectives." *Id.* at 14. Although [Petitioner] acknowledges that the jury is entitled to hear testimony concerning the fact that an arrest warrant was issued, he oddly insists that the jury should not hear the basis for obtaining that warrant. *Id.*
>
> As the PCRA court properly notes, *Commonwealth v. Hartley*, 621 A.2d 1023 (Pa.Super. 1993) is particularly instructive on this issue. In *Hartley*, we reiterated the occasions in which the improper bolstering of testimony will be found to have occurred, stating:
>
>> This court has recognized that improper bolstering or vouching for witnesses by the Commonwealth occurs in two situations: "(1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witnesses testimony." *Commonwealth v. Reed*, 300 Pa.Super. 224, 230, 446 A.2d 311, 314 (1982).
>
> *Hartey*, 621 A.2d at 1026.
>
> Following a review of the trial testimony, we agree with the PCRA court that the testimony which [Petitioner] found objectionable did not improperly bolster or vouch for Ms. Person's testimony. Specifically, [Petitioner] directs our attention to a passage of Detective Mostovyk's testimony wherein he explained the process and procedure employed in obtaining

the arrest warrant for [Petitioner]. [Petitioner's] Brief at 10 (citing N.T. Trial, 10/10/06, at 26-27). However, nothing in that testimony "places the prestige of the government behind [Ms. Person] by personal assurances of [her] veracity." *Hartey*, 621 A.2d at 1026. Indeed, nowhere in the cited passage of testimony does Detective Mostrovyk reference Ms. Person or suggest an opinion as to the veracity of her testimony. Moreover, nothing in Detective Mostovyk's testimony is suggestive of evidence, not before the jury, supporting Ms. Person's testimony. Accordingly, [Petitioner's] claim of trial counsel's ineffectiveness is without arguable merit and does not afford him any relief.

[Petitioner] also claims trial counsel was ineffective for failing to seek a limiting instruction to the jury charge premised on his underlying assertion that Ms. Person's testimony was improperly bolstered or that Detective Mostovyk somehow vouches for the veracity of her testimony. [Petitioner's] Brief at 15-16. We note, however, that "[a]s a general proposition, a court should only charge the jury 'on the law applicable to the factual parameters of a particular case and it may not instruct the jury on inapplicable legal issues.'" *Boyle v. Independent Lift Truck, Inc.*, 607 Pa. 311, 317, 6 A.3d 492, 495 (2010) (quoting *Cruz v. Northeastern Hosp.*, 801 A.2d 602, 611 (Pa.Super. 2002); *See Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975) ("A trial court is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial."). Insofar as we have determined *supra* that the testimony to which [Petitioner] objects did not improperly bolster or vouch for the veracity of Ms. Person's testimony, we discern no basis for requesting a limiting instruction on an inapplicable legal issue. Therefore, we conclude there is no arguable merit to [Petitioner's] contention that trial counsel was ineffective for requesting an instruction on an otherwise inapplicable issue.

*Commonwealth v. Byrd*, No. 1558 EDA 2011, slip op. at 4-7 (Superior Court, April 27, 2012);

Petition, Superior Court Opinion; Commonwealth's Response, Document 12-2.

Petitioner's argument that trial counsel was ineffective in regard to a limiting instruction concerning the allegedly bolstering testimony was found to be meritless. Counsel cannot be considered ineffective under *Strickland* for failing to pursue meritless claims or objections; therefore, both the PCRA court's and Superior Court's decisions rejecting Petitioner's ineffectiveness claim regarding this testimony and a limiting instruction did not constitute an unreasonable application of federal law. Accordingly, habeas relief is not warranted on this claim.

2. <u>Ineffective Assistance of Counsel – Exculpatory Testimony</u>

Mr. Byrd next claims that trial counsel was ineffective for failing to bring out exculpatory testimony from a defense witness. As he further explains:

> The states star witness testified that the Petitioner drove her home the night of May 19, 2004 which he then committed the crime in question. During a PCRA hearing the Petitioner's mother testified that the Petitioner did not take the witness home because she watched as the witness got on public transportation. Petitioner's mother also testified that she informed trial prior to trial of such facts. Consequently, the states star eyewitness placed the Petitioner on the scene. The jury never learned of the exculpatory testimony of the defense witness stating otherwise.

Petition at 17. This issue, too, was presented to the state courts during Petitioner's PCRA proceeding, making it properly before me.

The PCRA court elaborated:

> Nor is petitioner entitled to PCRA relief based upon trial counsel's failure to elicit from petitioner's mother, Michele Byrd, on direct examination that she saw April Person and her son leave her home on a SEPTA bus, and not in a car driven by petitioner, on the day of the murder.
>
> A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be given great deference by reviewing courts. *Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) (citations omitted). At the evidentiary hearing in this case, Ms. Byrd first testified that she was surprised when she took the stand at trial that trial counsel did not inquire about her having seen Ms. Persons take the bus. Ms. Byrd claimed that she knew this evidence was important to impeach Ms. Persons' testimony that petitioner had driven her home. Yet she did not question trial counsel about this alleged important omission or submit an affidavit to this court that she was aware of this issue until July 25, 2008 – approximately two years after her son's trial. She also testified that she did not know until two years after the trial that Ms. Persons testified that petitioner had driven her home on the day in question. (N.T. 12-17-10, pp. 57-60, 75-78). This court found Michele Byrd's claim that, <u>before the trial</u>, she told trial counsel she had observed Ms. Persons leave her home by bus incredible and unworthy of belief.
>
> Finally, even if this court had found Ms. Byrd's testimony credible in this regard, petitioner would still not be entitled to relief since he suffered no prejudice from counsel's omission. There was no question that Ms. Person was present when the shooting occurred and that she was an eyewitness to the murder. Subsequently, petitioner and his mother pressured Ms. Persons into recanting her prior statements. In light of this evidence, how Ms. Persons got back to her home from Ms. Byrd's residence was tangential at best to any material issue at trial. Although an inconsistency on this issue could have been used by the defense to further challenge Ms. Persons' credibility, it is unlikely that the outcome of the trial could have been any different.

*Commonwealth v. Byrd*, Cp-51-CR-0801641-2005, slip op. at 7-8 (C.C.P. Philadelphia County, September 16, 2011)(emphasis in original); Petition, Commonwealth Court Opinion; Commonwealth's Response, Document 12-1.

Subsequently, the Superior Court opined:

In support of his second issue, [Petitioner] claims that trial counsel was ineffective by failing to question Michele Byrd, [Petitioner's] mother, about her recollection of events on the night of Mr. Graham's murder. Specifically, [Petitioner] claims Ms. Byrd would have testified that she saw Ms. Person and Ms. Person's son board a SEPTA transit bus without [Petitioner]. [Petitioner's] Brief at 20. Because Ms. Person testified that [Petitioner] gave her a ride home in a car, [Petitioner] suggests this inconsistency would diminish Ms. Person's credibility and, thus, it was incumbent upon trial counsel to elicit such testimony. *Id.*

We note that at trial, in addition to explaining how [Petitioner] came to be at her home, Ms. Person testified, "We went into the house, [Petitioner] had my son downstairs, I went into the house to call [Mr. Graham] but the phone wasn't working. So, as I was hanging up [Mr. Graham] was outside beeping his horn." N.T. Trial, 10/05/06, at 140. Thereafter, Ms. Person testified, "Then [Petitioner] came outside, and was yelling telling me to go in the house. And as he was yelling [Mr. Graham] told him to stop, leave me alone, and [Petitioner] said, 'Mind your business,' and [Petitioner] shot [Mr. Graham]." *Id.* at 141. Given the foregoing eyewitness testimony, we agree with the PCRA court. Specifically, we cannot conclude that but for counsel's failure to question Ms. Byrd about the mode of transportation Ms. Person took home, there was a reasonable probability that the outcome of the proceedings would have been different. While such conflicting testimony may cast doubt on Ms. Person's credibility and recollection of how she got home, such is the limit of the conflict. Indeed as the PCRA court opined, such inconsistency was tangential and immaterial to any substantive issues at trial. PCRA Court Opinion, 9/16/11, at 8. Irrespective of how Ms. Person arrived home or how [Petitioner] was placed at the scene of the crime, Ms. Person's uncontroverted testimony places him at the scene when Mr. Graham arrived and identifies [Petitioner] as the shooter. Accordingly, we conclude that [Petitioner] has failed to demonstrate that trial counsel rendered ineffective assistance. Therefore, we conclude the PCRA court did not err in denying [Petitioner's] petition.

*Commonwealth v. Byrd*, No. 1558 EDA 2011, slip op. at 7-8 (Superior Court, April 27, 2012); Petition, Superior Court Opinion; Commonwealth's Response, Document 12-2.

Based upon my review of the record, I find that the state court's conclusion that counsel did not render ineffective assistance in regard to this issue was not an unreasonable application

of the *Strickland* standard, nor was it reached based on an unreasonable determination of the facts in light of the evidence. Federal habeas relief is not warranted for this claim.

## **RECOMMENDATION**

For the reasons stated above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING. It is further recommended that a finding be made that there is no probable cause to issue a certificate of appealability.[11]

BY THE COURT:

_S/M. FAITH ANGELL_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By E-mail:
Hon. Mary A. McLaughlin
Jennifer O. Andress, Esq.          jennifer.andress@gmail.com

By Mail:
Wali Byrd
GW-1449
S.C.I. Mahanoy
301 Morea Road
Frackville, PA 17932

---

[11] Petitioner is advised that he may file objections to this Report and Recommendation. *See* Local R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.